SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal Bar No. 250131
ANDREA L. FELLION, Cal Bar No. 262278
JOHN ELLIS, Cal Bar No. 269221
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:  415.434.3947
E mail     pcowie@sheppardmullin.com
        afellion@sheppardmullin.com
        jellis@sheppardmullin.com

Attorneys for Defendant
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC.

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA GIBBS, as an individual and on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC; and DOES 1 through 10 inclusive,<br><br>        Defendants. | Case No. **'24 CV 2209 LL    DEB**<br><br>(Removed from San Diego Superior Ct, Case No. 37-2024-00015349-CU-OE-CTL)<br><br>**DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC's NOTICE OF REMOVAL OF ACTION (CLASS ACTION FAIRNESS ACT)** |

Case No.
DEFENDANT'S NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant Swift Transportation Co. of Arizona, LLC ("Defendant") hereby removes this action from the Superior Court of the State of California for the County of San Diego, Case No. 37-2024-00015349-CU-OE-CTL, to the United States Court for the Southern District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff Joshua Gibbs' ("Plaintiff") lawsuit under 28 U.S.C. sections 1332(d), 1441, 1453 and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I.    STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d).

2. This Court has jurisdiction over this case under the CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000 and; (4) there is diversity of citizenship between at least one class member and one defendant. As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.

3. CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at

least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

4.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.    CLAIMS AND PROCEDURAL HISTORY

5.    On or about April 2, 2024, Plaintiff commenced this action against Defendant by filing a Class Action Complaint in the Superior Court for the County of San Diego, entitled *Joshua Gibbs v. Swift Transportation Co. Of Arizona, LLC*, Case No. 37-2024-00015349-CU-OE-CTL (the "Complaint"), (attached as **Exhibit A**).  The attendant summons, San Diego Superior Court Alternative Dispute Packet, and Civil Cover Sheet are attached as **Exhibits B-D**.  On or about April 14, 2024, Plaintiff filed the proof of service of the Complaint (**Exhibit E**).

6.    On or about May 30, 2024, Defendant timely answered Plaintiff's Complaint (**Exhibit F**).

7.    On or about May 31, 2024, Plaintiff filed a First Amended Class and Representative Action Complaint ("FAC") adding a claim for alleged violations of the California Labor Code section 2698 *et seq.*, the Private Attorneys General Act ("PAGA") (**Exhibit G**).  Defendant acknowledged receipt of Plaintiff's First Amended Complaint and, on or about July 25, 2024, timely answered Plaintiff's FAC (**Exhibits H and I**).

8.    In September 2024, Plaintiff and Defendant each filed their respective case management statement (**Exhibits J and K**).  Per the state court's instruction, Defendant also filed a Notice of Further Case Management Conference (**Exhibit L**).

9.    Plaintiff's putative class claims arise from allegations that Defendant failed to comply with California's wage and hour laws in compensating drivers as follows: (1) failing to pay proper sick wages; (2) failing to provide accurate itemized wage statements; (3) violation of California's Unfair Competition Act ("UCL"),

Bus. & prof. Code § 17200 et seq.; and (4) PAGA Penalties (Labor Code § 2698, et seq.).

10.    Plaintiff's putative class claims arise from allegations that Defendant "fail[ed] to pay sick pay wages at the regular rate of pay," because Defendant allegedly failed to pay "non-base hourly wages or other non-hourly, non-discretionary remuneration" which it "fail[ed] to consider…when paying sick pay wages" and therefore "underpa[id] sick pay wages to Plaintiff and other non-exempt employees at their base rates of pay." FAC ¶ 2. The FAC further alleges that "[b]ecause Plaintiff and other non-exempt employees are underpaid sick pay wages, Defendant[] routinely fail[ed] to timely pay Plaintiff and other non-exempt employees all wages during employment or upon separation of employment" and Defendant routinely "fail[s] to furnish wage statements that accurately show and itemize all applicable hourly rates in effect during the pay period, gross wages earned, and net wages earned." FAC ¶ 3. The Complaint seeks relief in the form of unpaid wages, restitution, penalties, interest, and attorneys' fees. FAC, Prayer.

11.    A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the San Diego Superior Court. **Exhibits A-L** contain all "process, pleadings, and orders" filed with the court or served on Defendant in accordance with 28 U.S.C. § 1446(a).

## III.    JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED.

12.    Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 571 U.S. 81, 84 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation" that the jurisdictional facts exist. *Id*. at 89. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. (emphasis added); *Arias v. Residence Inn by Marriott*,

936 F.3d 920 (9th Cir. 2019) (*courts may not remand* where notice of removal plausibly alleges the basis for removal, *without giving the defendant an opportunity to prove the jurisdictional requirements* are satisfied) (emphasis added).

13.     The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Dart Cherokee*, 574 U.S. at 88.  Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 *broadly in favor of removal*…" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").  In *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'"

## A.     The Case Is A Proposed Class Action With A Putative Class Of At Least 100 Members, And Defendant Is Not A State, State Official, Or Government Entity

14.     This action meets CAFA's definition of a class action, which is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b).  This action has been styled as a California class action, which is authorized by California Code of Civil Procedure section 382.  Compl. ¶ 18 ("This action has been brought and may be properly maintained as a class action pursuant to the provisions of California's class action statute, and other applicable law.").  Plaintiff

purports to bring this case on behalf of "(i) all current and former non-exempt employees of Defendants in the State of California who have been paid sick pay wages in a workweek since April 2, 2020, in which they also earned non-base hourly wages or other non-hourly, non-discretionary remuneration (the "Sick Pay Class"), and (ii) all current and former non-exempt employees of Defendants in the State of California who have been paid sick pay wages in a workweek since April 2, 2023, in which they also earned non-base hourly wages or other non-hourly, non-discretionary remuneration (the "Wage Statement Class")."  FAC ¶14.

15.    28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

16.    Defendant is neither a state, a state official, nor a government entity. The Complaint alleges that the class is "so numerous, and plaintiff is informed believed [sic] exceed several hundred persons " and the "precise number of the Class members… will be known to Plaintiff through discovery."  Compl. ¶ 19.  On the basis of its own investigation, Defendant determined there are more than 100 current or former California drivers employed by Defendant since April 2, 2020 (i.e. Plaintiff's alleged start of the statute of limitations).[1]  Therefore, Plaintiff's proposed class consists of at least 100 members both now at the time of removal and at the institution of this civil action.

---

[1] Although Plaintiff defines his proposed class as "non-exempt employees," Defendant's employee drivers are exempt from California and federal overtime pursuant to Cal. Code Regs. tit. 8, § 11090(3)(F)(1) and 29 U.S.C. § 213(b)(1).  However, Plaintiff was employed by Defendant as a driver, making Plaintiff's reference to "non-exempt employees" ambiguous.  Defendant understands and alleges that Plaintiff intends to include drivers employed by Defendant in California in his proposed class.

**B.     Minimum Diversity of Citizenship Exists Here**

17.     CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

18.     The defendant is not required to submit any evidence of the parties' domicile at the notice of removal stage (*cf. Dart Cherokee*, 574 U.S. at 84), "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…"); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)).  A defendant's allegation concerning the parties' citizenship is sufficient for removal.  *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (allegation of plaintiff's citizenship is sufficient for removal).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

19.     <u>Plaintiff's Citizenship:</u>  Here, Plaintiff alleges that he "work[ed] for Defendant[][2] in California."  FAC ¶ 4.  Plaintiff further alleges that the putative classes consist entirely of California employees.  Indeed, Plaintiff alleges that the putative classes include: "(i) all current and former non-exempt employees of

[2] Plaintiff erroneously refers to "Defendants" instead of "Defendant" throughout the FAC.  The quotes in this removal correct that error in order to ensure clarity.

Defendant in the State of California who have been paid sick pay wages in a workweek since April 2, 2020, in which they also earned non-base hourly wages or other non-hourly, non-discretionary remuneration (the "Sick Pay Class), and (ii) all current and former non-exempt employees of Defendant in the State of California who have been paid sick pay wages in a workweek since April 2, 2023, in which they also earned non-base hourly wages or other non-hourly, non-discretionary remuneration (the "Wage Statement Class)." *Id.* at ¶ 14. However, Plaintiff does not allege his residence or domicile or that of any other putative class member.

20.    Based on Defendant's employment records, Plaintiff's residence is in California. As Plaintiff is a California resident and because Plaintiff's proposed class is defined to include "employees of Defendant in the State of California," Defendant may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in, and therefore are citizens of, California.

21.    <u>Defendant's Citizenship:</u> As a limited liability company, Defendant is deemed to be a citizen of the states in which each of its members is a citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

22.    Defendant is, and was at the institution of this civil action, a limited liability company organized under the laws of Delaware whose sole member is now, and was at the institution of this civil action, Swift Transportation Co., LLC. Swift Transportation Co., LLC is, and was at the institution of this civil action, a limited liability company organized under the laws of Delaware whose sole member is, and was at the institution of this civil action, Knight-Swift Transportation Holdings, Inc. ("Knight-Swift"). Knight-Swift is now, and was at the institution of this civil action, a corporation incorporated under the laws of Delaware.

23.    As a corporation, Knight-Swift is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of

business.  28 U.S.C. § 1332(c)(1).

24.    In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id*. at 93.

25.    Under the foregoing standard, Knight-Swift, and therefore Swift Transportation Co., LLC, and Swift Transportation Co. of Arizona LLC (Defendant) are citizens of Arizona and Delaware for purposes of removal.  Knight-Swift is incorporated in the State of Delaware and maintains its corporate headquarters in Phoenix, Arizona.  Phoenix, Arizona is where the vast majority of Knight-Swift's corporate and executive officers are employed.  Phoenix, Arizona is also where the actual center of direction, control and coordination for Knight-Swift takes place. Accordingly, Knight-Swift's principal place of business is now at the time of removal, and was at the institution of this civil action, in the State of Arizona. *See* 28 U.S.C. § 1332(c)(1).

26.    To the extent that Defendant is deemed to be a "an unincorporated association" under 28 U.S.C. § 1332(d)(10), it remains a citizen of Delaware and Arizona at all relevant times.  28 U.S.C. § 1332(d)(10) provides that for purposes of CAFA, an "unincorporated association" shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.  Defendant is organized under the laws of Delaware and has its principal place of business in Arizona.  Defendant maintains its headquarters in Phoenix, Arizona, Phoenix, Arizona is where the vast majority of the Defendant's executive officers are employed.  Phoenix, Arizona is also where the actual center of direction,

Case No.
DEFENDANT'S NOTICE OF REMOVAL

control and coordination of Defendant's business takes place.

27.    In accordance with the foregoing, Defendant is now at the time of removal, and was at the time of the institution of this civil action, a citizen of Delaware and Arizona (and not a citizen of California), while Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil action, citizens of California (and not citizens of Arizona or Delaware).  Thus, the minimum diversity requirement under CAFA is satisfied. Plaintiff did not plead these facts as to the parties' citizenship.

28.    Doe Defendants:  Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 10, does not deprive this Court of jurisdiction.

29.    In accordance with the foregoing, Plaintiff and at least some of the putative class are citizens of the State of California, while Defendant is a citizen of Delaware and Arizona.  Thus, the minimum diversity requirement under CAFA is satisfied.

**C.    The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA**

30.    Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

31.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*

1    *Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014).

2    32.    Moreover, a defendant **need not set forth evidence** establishing the

3    amount in its notice of removal.  *Id*.  A defendant is not obliged to "research, state,

4    and prove the plaintiff's claims for damages."  *McCraw v. Lyons*, 863 F. Supp. 430,

5    434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by

6    setting forth a plausible allegation in the notice of removal that the amount placed in

7    controversy by plaintiff exceeds the jurisdictional minimum.  *See Dart Cherokee*,

8    574 U.S. at 89 (holding that "a defendant's notice of removal need include only a

9    plausible allegation that the amount in controversy exceeds the jurisdictional

10    threshold" and evidentiary submissions are required only if "the plaintiff contests, or

11    the court questions, the defendant's allegations").

12    33.    CAFA authorizes the removal of class actions in which, among the

13    other factors mentioned above, the *aggregate* amount in controversy for all class

14    members exceeds five million dollars ($5,000,000.00).  *See* 28 U.S.C. § 1332(d).

15    By demonstrating that the actual amount in controversy exceeds the threshold,

16    Defendant does not concede the validity of Plaintiff's claims or the likelihood that

17    Plaintiff will recover anything.

18    34.    "In determining the amount in controversy, the Court accepts the

19    allegations contained in the complaint as true and assumes the jury will return a

20    verdict in the plaintiff's favor on every claim."  *Henry v. Cent. Freight Lines, Inc.*,

21    692 F. App'x 806, 807 (9th Cir. 2017).  "The amount in controversy is simply an

22    estimate of the total amount in dispute, not a prospective assessment of defendant's

23    liability."  *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see*

24    *also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal.

25    2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff

26    has alleged, not what the defendants will owe…") (aff'd by 631 F.3d 1010 (9th Cir.

27    2011)).

28    35.    In the Ninth Circuit, the amount in controversy is determined "at the

time of removal." *Kroske v. US Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase,* 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez,* 888 F.3d at 417 (emphasis in original). *Chavez* held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC,* 899 F.3d 785 (9th Cir. 2018).

36.     Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. The Complaint is "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.,* 720 F.3d 1121 (9th Cir. 2013).

37.     Defendant provides the following calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

38.     Defendant understands Plaintiff's definition of the putative class to include all drivers employed by Defendant who have performed work from April 2, 2020 to the present.  Indeed, Plaintiff alleges that the putative class includes "all current and former non-exempt employees of Defendant in the State of California who have been paid sick pay wages in a workweek since April 2, 2020, in which they also earned non-base hourly wages or other non-hourly, non-discretionary remuneration (the "Sick Pay Class"). FAC ¶ 14.  Defendant has offered paid sick leave to all California employees since at least 2015.  During the entire relevant period defendant compensated almost every California driver via hourly pay as well as additional forms of non-hourly pay.[3]  Plaintiff's definition of the putative class therefore includes California drivers who have performed work from April 2, 2020 to the present and earned hourly pay.

**Waiting Time Penalties**

39.     Under Cal. Labor Code § 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *See* Cal. Lab. Code §§ 201-203.

40.     Plaintiff alleges that Defendant "routinely fail[s] to timely pay Plaintiff and other non-exempt employees all wages during employment or upon separation of employment " in accordance with Cal. Labor Code §§ 201 - 203.  FAC ¶ 3. Pursuant to Cal. Labor Code § 203, Plaintiff alleges that "wages shall continue as a penalty from the due date, and at the same rate until paid, but the wages shall not continue for more than thirty (30) days" each.  FAC ¶ 27.

---

[3] As noted above, Plaintiff's reference to "non-exempt employees" is ambiguous.  Defendant understands and alleges that Plaintiff intends to include drivers employed by Defendant in California in his proposed class.

41.     The statute of limitations for Plaintiff's waiting time penalties claim is three years.  Cal. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1390 (2010).

42.     Defendant routinely pays various forms of pay in addition to their base hourly pay.  According to Plaintiff's theory of the case (which Defendant disputes), Defendant would have paid an incorrect sick time rate for every putative class member who earned some kind of non-hourly pay during the same period they earned non-hourly wages of any kind.  Defendant routinely pays California drivers non-hourly pay.  Here, Defendant's investigation revealed that as of August 2024, there were 350 former employees who took sick leave within the three year limitations period, were paid a form of non-hourly wage within the period used to calculate employees' sick leave rate of pay, and subsequently stopped working for Defendants.  Assuming that employees continue to take sick leave at the same rate, and assuming this case is tried in September 2025 (one year and one month after August 2024), there will be approximately **464 employees** in this category ((350 / 40 x 53).  The average hourly rate of pay for this group of employees was $31.94.  Thus, Defendant independently determined based on an investigation of its own business records that the amount in controversy for waiting time penalties damages (exclusive of interest) is **$3,556,838.40** (464 former employees x $255.52 per day [8 hours per day x $31.94 per hour] x 30 days).

**Wage Statement Penalties**

43.     Under Cal. Labor Code § 226, employers "shall . . . furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing" various subcategories of information.  *See* Cal. Lab. Code § 226(a).

44.     Plaintiff alleges that Defendant failed to furnish "wage statements that accurately show the applicable hourly rates in effect during the pay period, gross

wages earned, and net wages earned" and that "[s]uch a pattern, practice, and uniform administration of corporate policy is unlawful." FAC ¶¶ 32, 33.

45.    The statute of limitations on a wage statement claim is one year. Cal. Civ. Proc. Code § 340(a).

46.    Section 226(e) provides for statutory damages for this alleged failure in the amount of $50 per employee for the initial pay period where the violation occurred, and $100 per employee for each subsequent pay period where a violation occurred, but not to exceed a total of $4,000 per employee. *See* Cal. Lab. Code § 226(e).

47.    According to Plaintiff's theory of the case (which Defendants dispute), Defendant would have paid an incorrect sick time rate for every putative class member who earned some kind of non-hourly pay during the period used to calculate that paid sick leave. Here, Defendant's investigation revealed that as of August 2024, there were 325 employees who took sick leave within the one year limitations period and were paid a form of non-hourly wage within the period used to calculate employees' sick leave rate of pay. Assuming that employees continue to take sick leave at the same rate, and assuming this case is tried in September 2025 (one year and one month after August 2024), there will be approximately **589 employees** in this category ((325 /16 months) x 29 months). Defendant calculated the number of wage statements these employees received during and after the pay period in which they earned sick leave, extrapolated that number, and independently determined based on its own business records and on the allegations contained within the Complaint the amount in controversy for wage statement penalties (exclusive of interest). Assuming that two-thirds of these 589 employees reach the $4,000 wage statement penalty cap, the amount in controversy for capped wage statement penalties alone is **$1,572,000** (393 employees (589 x 2/3) x 4,000).

**Plaintiff's Other Claims**

48.    In addition to the claims described above, Plaintiff alleges that

Defendant failed to provide timely pay during employment and failed to pay the correct sick pay rate pursuant to Labor Code Sections 204, 210, and 246. Plaintiff also seeks restitution for all monies withheld, acquired, or converted by means of the allegedly unfair business practices pursuant to California Business and Professions Code Section 17200. These claims further increase the amount in controversy past the $5,000,000 threshold. Defendant reserves the right to present evidence of and further analysis of these claims should Plaintiff move to remand or if the Court questions its subject matter jurisdiction.

49. Even without these additional claims, the amount in controversy is **$5,128,838.40** ($3,556,838.40 + $1,572,000), which exceeds the jurisdictional minimum.

**Amount In Controversy For Attorneys' Fees**

50. Plaintiff also alleges an entitlement to attorneys' fees. FAC, Prayer ¶¶ 4-7. Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees are also included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In *Fritsch*, the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must also be considered in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 -796 (9th Cir. 2018).

51. Federal courts typically use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of **$1,282,209.60** is properly included in the amount in controversy ($5,128,838.40 total for claims described above x 25% = $1,282,209.60).

52.     The same amount for alleged attorneys' fees is placed in controversy using the "lodestar" method of fee computation.  *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

53.     For all of the forgoing reasons, Defendant alleges that the amount placed in controversy by Plaintiff's claims is **$6,411,048**, which is greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.  The amount in controversy requirement for CAFA is therefore satisfied.

**D.     No CAFA Exceptions Apply**

54.     CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4).  However, none of these exceptions are applicable here.  The party resisting removal has the burden of proving the existence of a CAFA exception.  *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

55.     The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as noted above, Defendant is not a citizen of California.  Thus, this exception does not apply.

56.     Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, these exceptions too, only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed in California, and

Defendant is not a California citizen, these exceptions also do not apply.

## IV.    SUPPLEMENTAL JURISDICTION

57.    Under 28 U.S.C. § 1367(a):

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

58.    To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action.  *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiff's Complaint.  *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

59.    Here, the Court has supplemental jurisdiction over Plaintiff's non-class PAGA claims, because those claims emanate from and form part of the same "case or controversy" as Plaintiff's class claims, such that they should all be tried in one action.  *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Plaintiff's PAGA claims seek to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiff's class claims.  *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA

claims are therefore properly within the Court's supplemental jurisdiction."). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in Plaintiff's Complaint because the claims involve the same witnesses, same disputed violations of the Labor Code, and the PAGA claims fall or rise based on the class claims. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock*, 2007 WL 1989635, at *3.

60.    None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case. Plaintiff's PAGA claim does not raise novel or complex issues of State law different from the class claims, they do not substantially predominate over the named Plaintiff's individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction. The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction. *Exec. Software N. Am.*, 24 F.3d at 1556.

61.    For these reasons the Court has supplemental jurisdiction over any claims pleaded by Plaintiff falling outside of the Court's original jurisdiction, including but not limited to Plaintiff's claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.* Compl. ¶¶ 72-77.

## V.    TIMELINESS OF REMOVAL

62.    Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed–during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

63.    When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b)

thirty-day window does not begin to run.  *Id.* at  692-695.  "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."  *Id.* at 695.  This reasoning was confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

64.     A complaint is "indeterminate" when "it is unclear from the complaint whether the case is removable, *i.e.*, the [jurisdictional facts are] unstated or ambiguous."  *Harris*, 425 F.3d at 693.  Here, the Complaint does not affirmatively allege or otherwise state that the amount in controversy exceeds $5,000,000, nor does Plaintiff allege his citizenship or the complete (or accurate) citizenship of Defendant.  Further, it is not discernable from the face of the original Complaint or FAC that more than $5,000,000 was placed in controversy.[4]

65.     Under *Harris*, the Court must not "inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when.  Rather…the court [may] rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper."  *Harris*, 425 F.3d at 695 (quoting, *Lovern v. GMC,* 121 F.3d 160, 162 (4th Cir. 1997).  Thus, the Complaint is "indeterminate" and its service does not trigger the first 28 U.S.C. § 1446(b) thirty-day window to remove because it does not reveal the citizenship of the parties or the amount in controversy.  *See*

---

[4] Indeed, the FAC only indicates that it seeks relief "exceeding $25,000" as an apparent attempt to avoid limited civil jurisdiction.  FAC ¶ 6.

*Roth*, 720 F.3d at 1125 (holding that complaint was "indeterminate" when "[i]t did not reveal on its face that…there was sufficient amount in controversy to support jurisdiction under CAFA."); *see also Calkins v. Google, Inc*., 2013 U.S. Dist. LEXIS 97829, 2013 WL 3556042 at *2-3 (N.D. Cal. 2013) (holding that service of complaint did not trigger a thirty-day window when amount in controversy was not affirmatively stated, even where defendant could have deduced the amount in controversy from documents in its possession).

66.     As of the date of this filing, the Defendant has not received any subsequent paper from Plaintiff determinative of the jurisdictional amount in controversy in this matter or of the citizenship of the parties.  Where neither the initial pleading nor "other paper" discloses the grounds for removal, a defendant may remove at any time after it independently learns of the facts supporting removal jurisdiction.  *Roth*, 720 F.3d at 1125.  Defendant, based on its investigation and internal records, has since been able to determine that the amount in controversy based on the allegations in the Complaint, well exceeds the $5,000,000.00 threshold.  Thus, like in *Roth*, the facts alleged in this notice support that removal is both proper and timely.

## VI.    JOINDER

67.     Defendant is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint.  The only defendants named in the Complaint are Defendant and fictitiously named Doe Defendants, whose presence is disregarded for purposes of removal.

## VII.    VENUE

68.     Plaintiff filed this matter in San Diego County, California.  Venue is proper in this Court pursuant to 28 U.S.C. sections 84(d), and 1391.

## VIII.    NOTICE TO PLAINTIFF AND STATE COURT

69.     In compliance with 28 U.S.C. section 1446(a), true and correct copies

of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A-L**. Notice of this notice of removal will be promptly filed in the Superior Court for the County of San Diego and served on Plaintiff.

70.    WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California.

Dated:  November 25, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
          /s/ Andrea Fellion
            PAUL S. COWIE
          ANDREA L. FELLION
            JOHN D. ELLIS

          Attorneys for Defendant
        SWIFT TRANSPORTATION CO.
          OF ARIZONA, LLC.

# TABLE OF EXHIBITS

## NOTICE OF REMOVAL

| Exhibit | Description | Page |
|---------|-------------|------|
| A | Class Action Complaint | 24 |
| B | Summons | 35 |
| C | San Diego Superior Court ADR Information Packet | 37 |
| D | Civil Case Cover Sheet | 40 |
| E | Proof of Service | 43 |
| F | Answer to Plaintiff's Complaint | 46 |
| G | First Amended Class and Representative Complaint | 62 |
| H | Notice & Acknowledgement of Receipt | 74 |
| I | Answer to Plaintiff's First Amended Class and Representative Complaint | 76 |
| J | Plaintiff's Case Management Statement | 93 |
| K | Defendant's Case Management Statement | 100 |
| L | Notice of Further Case Management Conference | 107 |

SMRH:4861-8595-7325.10

Case No.

DEFENDANT'S NOTICE OF REMOVAL